IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAYMOND J. BERGERON-DAVILA,

Plaintiff,

v.

MARTHA J. MASCIOPINTO, JUSTIN RIBAULT, DENISE VALERIUS, LUCINDA BUCHANAN, MEDICAL DOCTOR DOES 1–3, MEDICAL STAFF DOES 1–8, FOOT DOCTOR DOES 1–2, and PHYSICAL THERAPIST DOE 1,

Defendants.[1]

OPINION and ORDER

20-cv-13-jdp

---

Pro se plaintiff Raymond J. Bergeron-Davila, an inmate at Columbia Correctional Institution (CCI), alleges that defendant prison officials failed to give him proper treatment for his neuropathic pain, foot pain, and asthma. After screening his amended complaint, I gave him leave to proceed on claims under the Eighth and Fourteenth Amendments to the United States Constitution and Wisconsin medical malpractice law. Dkt. 27.

Bergeron-Davila has filed numerous motions that I address in this order.

**A. Motions for preliminary injunctive relief**

Bergeron-Davila has filed six motions for preliminary injunctive relief. This court, like all courts, rarely grants motions for preliminary injunctive relief. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984) ("[T]he granting of a preliminary injunction is

---

[1] I have updated the caption to reflect defendants' names as indicated in defendants' submissions at Dkt. 21 and Dkt. 84. Ribault, Valerius, and Buchanan are represented by the Department of Justice (DOJ), but DOJ did not accept service on behalf of Masciopinto, who is a contract employee and has yet to appear in this lawsuit, or on behalf of the Doe defendants. In this opinion, I will refer to the defendants who are represented by DOJ as the "state defendants."

an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (quoting *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir.1940) (per curiam) (alteration in original)).

**1. First motion**

Bergeron-Davila's first motion asks for three separate types of injunctive relief. He also filed a motion titled "motion for order" asking me to order the state defendants to submit a response to his request for an injunction because he had not yet received their response when he filed the motion. Dkt. 42. His motion is dated May 21, 2020, the same day the state defendants' response was due. He has since received the state defendants' response and replied to it, so I will deny this motion as moot. Future motions of this sort will be summarily denied, and if Bergeron-Davila continues to file them, I will consider restricting his right to file any motions.

**a. Legal papers**

Bergeron-Davila asks me to order defendants to grant him access to two large boxes of legal papers that his former counsel left in the CCI lobby. He says that these boxes contain "only a few files related to this case," as the majority of their contents concern other legal matters. *Id.*, at 3. The state defendants submit a declaration from Isaac Hart, CCI's interim litigation coordinator, who says that Bergeron-Davila has access to these materials now that they have been screened for any materials he might use to harm himself. Dkt. 40. In his reply, Bergeron-Davila doesn't dispute this, although he speculates that the state defendants might possess 16 DVDs related to a separate criminal case that he says are missing from the boxes. His request is moot regarding any files related to this case. And because the DVDs Bergeron-Davila mentions are not related to his underlying claims in this case, I cannot issue injunctive

relief regarding them. *See Roland Mach.*, 749 F.2d at 387 (preliminary injunction requires "showing some likelihood of succeeding on the merits" of underlying claim). I will deny this portion of Bergeron-Davila's motion, too.

**b. Albuterol inhalers**

I previously denied Bergeron-Davila's request that I order defendants to give him a prescription for albuterol inhalers, which he says are necessary to treat his asthma. I did so because I was satisfied by the state defendants' initial response that they weren't ignoring any breathing problems Bergeron-Davila might have and because I did not believe that a reply from Bergeron-Davila on this issue was needed. Dkt. 27, at 8. Bergeron-Davila asks me to reconsider my denial after considering the reply that he filed, Dkt. 28, and other materials. Dkt. 32.

Before I turn to Bergeron-Davila's request for reconsideration, I address two related motions he has filed, both entitled "motion for order." The first motion attempts to explain why he mailed his reply brief directly to the court instead of e-filing it. Dkt. 33. Bergeron-Davila is required to use the court's e-filing system if he is at an institution that participates in that system (which he is)—unless he shows good cause for an exception. Bergeron-Davila would have to submit a motion supported with an affidavit raising a credible concern with the e-filing system. He suggests that his institution is destroying documents rather than filing them. Dkt. 28-1. But he doesn't give any details about any documents that have been destroyed, and he doesn't put his accusation in the form of a declaration. In Dkt. 33 he says that the documents were too light to scan, but I don't find that credible either. Going forward, I will refuse to accept documents that are mailed to the court unless Bergeron-Davila establishes good cause for an exception to the e-filing requirement. The second motion asks me to review his reply brief and supporting materials before ruling on his motion for reconsideration.

Dkt. 34. This motion is unnecessary because I would review these materials as part of his motion for reconsideration, so I deny it. Unnecessary motions like these two "motions for order" are a waste of court resources. Such pointless motions will be summarily denied, and if Bergeron-Davila continues to file them, I will restrict Bergeron-Davila's filing rights.

I will deny Bergeron-Davila's motion for reconsideration. I denied Bergeron-Davila's request that I order defendants to prescribe him an albuterol inhaler because the state defendants submitted evidence showing that Bergeron-Davila did not need an inhaler. They submitted a declaration from the assistant manager of CCI's Health Services Unit (HSU), who said that Bergeron-Davila did not have an asthma diagnosis or a prescription for an inhaler in his medical records. Dkt. 22. He also said that HSU staff performed a "peak flow" test on Bergeron-Davila to determine whether he needed an inhaler, and that defendant medical doctor Justin Ribault noted that the results of the test suggested that Bergeron-Davila wasn't putting forth a full effort. *Id.* After the test, Ribault noted in Bergeron-Davila's file that although Bergeron-Davila had a past diagnosis of mild, intermittent asthma, he had not been issued an inhaler at his former institution since October 2018, about one and one-half years earlier. Dkt. 22-1, at 5. Ribault also noted Bergeron-Davila's history of recurrent self-injury, including ingesting foreign objects and engaging in self-laceration, and he wrote that he was reluctant to prescribe Bergeron-Davila a medical item that was not medically necessary given that Bergeron-Davila's recent history didn't contain anything that sounded like an asthma attack. He concluded that Bergeron-Davila's diagnosis of mild, intermittent asthma was "likely no longer current." *Id.*

In his reply, Bergeron-Davila says that his reports of symptoms of asthma and his use of other inmates' inhalers shows that he currently suffers from asthma. Dkt. 28. He also says

that the results of the peak flow test may have been compromised because the peak flow device wasn't fully reset and was cracked. He accuses the nurse who conducted the test (who is not a defendant in this case) of falsifying the results. And he says that Ribault's concerns about Bergeron-Davila's history of self-harm could have been addressed by having CCI staff administer the inhaler for him.

One of the threshold requirements for a preliminary injunction is that the plaintiff must show "some likelihood of succeeding on the merits" of his underlying claims. *Roland Mach.*, 749 F.2d at 387. This is not a high bar, but the plaintiff must show that he has a "better than negligible" chance of success. *Id.* (quoting *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982)). Bergeron-Davila has not made such a showing. Medical professionals are "entitled to deference in [their] treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). Bergeron-Davila may disagree with the conclusions that Ribault reached after reading his record and considering his peak flow test results, but nothing in the record thus far suggests that Ribault's decision was so flawed as to meet this standard. And even if the nurse did falsify his results, Bergeron-Davila's dispute would be with that nurse, not Ribault, as he has not suggested that Ribault was aware that the nurse had done so. Bergeron-Davila hasn't shown that he has more than a negligible chance of success on his inhaler claims, so I will deny his motion for reconsideration.

**c. No-stair restriction**

Bergeron-Davila asks me to order defendants to issue a medical restriction preventing him from being required to use stairs. He says that his condition of axonal and demyelinating

peripheral neuropathy makes it difficult for him to walk because of neuropathic pain and muscle and nerve degeneration in his legs. He says that using stairs causes substantial pain and places him at risk of a fall.

Ribault has submitted a declaration in which he says that Bergeron-Davila does not require a no-stair restriction. Dkt. 39. He attaches medical records from a February 2020 examination of Bergeron-Davila. Dkt. 39-1. During that visit, Bergeron-Davila said that he had been experiencing leg problems for a couple of years and that his legs had "started to go" in December 2019. *Id.* at 1. Ribault noted that Bergeron-Davila entered the examination room with an antalgic gait. Ribault does not define this term, but I take notice of the fact that it means a manner of walking that attempts to avoid pain.[2] Bergeron-Davila refused to try to stand on his heels because he said that he could not do so, but he was able to stand on his toes. Ribault noted that the exposed musculature of his legs was normal and that he sat in a relaxed manner. Before drafting his declaration, Ribault reviewed his notes from the February 2020 examination as well as findings from Bergeron-Davila's 2019 electromyogram and nerve conduction study with UW Neurology. He says that the study showed normal results for the nerves that control motor functions in the legs and that the only issue found in the study concerned the sural nerves, which relate to foot sensation. He says that Bergeron-Davila's "issue was exclusively sensory and would not affect motor function." Dkt. 39, ¶ 5. After reviewing these records, Ribault concluded that Bergeron-Davila's contention that he cannot use stairs is "out of proportion," that the findings from the 2019 study are "not severe," and that a no-stair restriction is unwarranted. *Id.*, ¶ 13–14.

---

[2] *See, e.g.*, dictionary.com, "antalgic gait," https://www.dictionary.com/browse/antalgic-gait.

Bergeron-Davila says in his reply brief that the findings from his 2019 study are outdated and that his condition has worsened since then. Dkt. 68. He also says in his reply brief for the first time that he suffers from a lipid disorder that affects his Achilles tendon, but he does not explain how this affects his ability to walk. But as with his asthma claims, Bergeron-Davila hasn't shown a reasonable chance of success on the merits of his underlying claims. He has not identified any medical evidence that his condition has significantly worsened since the 2019 study; the only evidence he offers is his own allegation that his nerve condition has deteriorated. Given the deference to which Ribault's treatment decisions are entitled, Bergeron-Davila's allegations alone, in the absence of any supporting medical evidence, aren't enough to show that his chances of success on his underlying claims are better than negligible. So I will deny this portion of his motion as well.

**2. Second motion**

In this motion, Bergeron-Davila asks me to order defendant Denise Valerius, a CCI nurse, to have no contact with him. Dkt. 35. He says that on April 20, 2020, after he reported asthma symptoms, Valerius told him that he would be seen for his asthma but never arranged for him to be treated. According to Bergeron-Davila, Valerius is the only nurse that works the third shift at CCI, so if he were to experience asthma symptoms during the third shift in the future, Valerius will be the only nurse who can respond. He says that an order requiring Valerius to have no contact with him is necessary because otherwise she will continue to ignore his requests for assistance. But to receive a preliminary injunction, a plaintiff must show that he will suffer irreparable harm without the injunction. *Roland Mach.*, 749 F.2d at 386. Bergeron-Davila doesn't say that Valerius has actively done anything to harm him that would require their separation; rather, he says that she failed to address his asthma symptoms on one

occasion. Preventing Valerius, the only third-shift nurse, from having any contact with Bergeron-Davila would not prevent any harm from occurring to him, because there isn't another third-shift nurse that he could see. Granting this relief would not prevent Bergeron-Davila from suffering any harm, irreparable or not, so he is not entitled to it.

Bergeron-Davila also asks me to order defendants to produce video footage that he says shows him being denied asthma treatment during an asthma attack. Although he calls this a request for a preliminary injunction, it is really a motion to compel discovery under Federal Rule of Civil Procedure 37, because he is asking me to order defendants to turn over discoverable material. Bergeron-Davila says that staff body cameras recorded footage of the April 20 incident. He says that he has submitted preservation requests regarding this footage to CCI staff but that he has not yet received a response. But as he notes in his motion, he has not yet requested this footage through discovery. *See* Dkt. 35, at 5. And under Rule 37(a)(3)(B)(iv), the state defendants must first fail to produce the footage in response to a request for production under Rule 34 before Bergeron-Davila may move to compel them to do so. Even then, Bergeron-Davila must also attempt to resolve the dispute by conferring with the state defendants in good faith before moving to compel. Fed. R. Civ. P. 37(a)(1). So Bergeron-Davila isn't entitled to this relief, either.

**3. Third motion**

Bergeron-Davila has filed a motion titled "motion for order" asking me to direct defendants to stop allowing non-medical personnel to respond to his health service requests. Dkt. 43. He attaches a copy of a health service request from May 18, 2020, in which he said that he was waiting to see his neurologist for treatment of his neuropathy, that he was in extreme neuropathic pain, and that he requested a change in his pain medication. Dkt. 43-1.

In response, a staff member named Pafford (who is not a defendant) wrote that Bergeron-Davila did not have an order for neurology. *Id.* The state defendants explain in their response to this motion that Pafford is the HSU staffer responsible for scheduling offsite medical appointments for CCI inmates. Dkt. 57.

I will interpret this motion as a request for a preliminary injunction because he is asking me to order defendants to take a certain action. Bergeron-Davila does not explain why he will suffer irreparable harm if Pafford continues to respond to his requests rather than a medical professional. Nor he does not explain why medical training is necessary to respond to every health service request that he might file. Accordingly, I will deny his motion.

**4. Fourth motion**

This motion, Dkt. 53, concerns defendant Martha Masciopinto, a contract physician at CCI who has not yet been served or appeared. According to Bergeron-Davila, during a February 6, 2020 medical appointment, Masciopinto told him that because he had filed his lawsuit, he would not receive treatment in the near future. He says that Masciopinto told him that she and the other defendants had to protect themselves from liability and that if they gave him treatment now, it would validate his claims in this lawsuit. He says that she also told him that she would ensure that he did not get any video recordings of this appointment, at least some of which would have been captured by wall cameras or body cameras. After the appointment, Masciopinto did not record anything about this appointment in Bergeron-Davila's medical file. Bergeron-Davila says that this is why he has received "zero medical services" since that date. *Id.*, at 3.

Bergeron-Davila asks me to order Masciopinto to document future visits with him. This request is too broad, so I will deny it. Under the Prison Litigation Reform Act, any injunctive

relief that I grant must be narrowly drawn to correct only the harm at issue and must be no more intrusive than necessary. 18 U.S.C. § 3626(a)(2). Bergeron-Davila has not accused Masciopinto of a general practice of failing to document his medical visits. Rather, he says that she failed to document a single visit. An order directing Masciopinto to document Bergeron-Davila's future visits is not narrowly drawn to correct the harm that Bergeron-Davila says occurred, so I cannot grant it.

Bergeron-Davila also asks me to order defendants to produce or preserve footage of this meeting. But, as noted above, Bergeron-Davila must first ask defendants to produce video footage through discovery before filing a motion to compel them to produce it. He does not say that he has done so regarding this footage, so I cannot order defendants to produce it. And I will not order defendants to preserve the footage when it does not appear that Bergeron-Davila has asked them to do so himself. In any event, Bergeron-Davila's motion has placed defendants on notice that this footage may be at issue in his lawsuit. If Bergeron-Davila is unable to obtain the footage through discovery, he may file a motion to compel in compliance with the Federal Rules of Civil Procedure.

Bergeron-Davila also asks me to order defendants to reevaluate his neuropathic pain condition and the effectiveness of his current medications. But I cannot tell whether a response from the state defendants is required on this issue because Bergeron-Davila has not complied with this court's procedures to be followed on motions for injunctive relief. Under these procedures, Bergeron-Davila must file with the court, and serve on defendants, proposed findings of fact supporting his request, along with any evidence he has to support those findings and his request for relief. Compliance with these requirements will allow me to better understand the factual basis for Bergeron-Davila's motion and will allow defendants to provide

a fuller response to his motion. So I will deny this portion of Bergeron-Davila's motion without prejudice to his renewing it at a later time, and I will attach to this order a copy of this court's procedures for briefing motions for injunctive relief. I expect Bergeron-Davila to comply with these procedures in any future motions for injunctive relief and I will deny any future motions that do not comply with these requirements.

**5. Fifth motion**

This motion, Dkt. 61, titled "motion for order," concerns a note that Ribault placed in Bergeron-Davila's medical file correcting what Ribault said was an error in the record of his previous examination of Bergeron-Davila. As part of their response to Bergeron-Davila's first motion for preliminary injunctive relief, the state defendants submitted a declaration from Ribault to which they attached four pages of Bergeron-Davila's medical records. Dkt. 39-1. In a record documenting Ribault's examination of Bergeron-Davila on February 20, 2020, Ribault wrote that Bergeron-Davila "sat in a relaxed fashion and was in distress." *Id.* at 1. On May 8, Ribault placed an entry in Bergeron-Davila's file stating that during the February 20 examination, Bergeron-Davila "sat in a relaxed fashion and was in NO ACUTE distress." *Id.* at 3 (emphasis in original). Bergeron-Davila says that Ribault placed this note in Bergeron-Davila's file not to correct an error but to weaken Bergeron-Davila's position, and he asks me to order Ribault "to cease manufacturing medical documents." Dkt. 61, at 1. Again, although Bergeron-Davila does not style this as a motion for preliminary injunctive relief, I will construe it as one because he is asking me to order Ribault to stop engaging in certain conduct.

I will deny Bergeron-Davila's motion. In essence, he says that Ribault's correction is not credible, and he asks me to bar Ribault from placing future corrections or notes in his file that Bergeron-Davila disagrees with. This would impermissibly interfere with Ribault's ability to do

his job as he sees fit. Bergeron-Davila is free to challenge Ribault's credibility at summary judgment or at trial, but a motion for preliminary injunctive relief is not the right way to resolve a credibility dispute like this.

**6. Sixth motion**

This motion concerns Bergeron-Davila's prescriptions for pain medication. Dkt. 76. He says that his current prescriptions are ineffective, and he asks me "to order the defendants to cease ignoring [his] pain complaints and/or . . . treat [his] chronic pain rather than leave it untreated." *Id.* at 3. A preliminary injunction issued by a court must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The purpose of this requirement is to put the parties on notice of what conduct is forbidden or ordered. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 415–16 (7th Cir. 2008). The relief that Bergeron-Davila requests is far too vague to satisfy Rule 65, as it would not tell defendants what they are required to do.

From Bergeron-Davila's reply to the state defendants' response, I can infer that at least part of the remedy he seeks is an order requiring defendants to give him a prescription for gabapentin. But an order commanding a defendant to take a particular action should be "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quoting *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). This is particularly true because Bergeron-Davila is asking me to order his physicians to prescribe him a particular medication that they have concluded is unnecessary. He has not adduced the type of overwhelming evidence that would be needed to support such an order. Accordingly, I will deny this motion as well. If Bergeron-Davila has such evidence, he may submit it in a future motion that complies with this court's procedures for obtaining preliminary injunctive relief.

### B. Miscellaneous motions

Since I issued my screening order, Bergeron-Davila has also filed numerous other motions on various topics.

#### 1. Motions for sanctions

Bergeron-Davila has filed four motions for sanctions. One accuses the state defendants of hand-delivering certain filings to Bergeron-Davila on the same day that they were filed on the docket rather than sending them by mail. Dkt. 64. One accuses a CCI nurse (who is not a defendant in this lawsuit) of making a false statement in a declaration relating to one of Bergeron-Davila's motions for preliminary injunctive relief, a statement that was not material to my ruling on that motion. Dkt. 72. One accuses defendants of blotting out a page of one of his motions, *see* Dkt. 53, at 6, that appears to have been inadvertently smeared. Dkt. 74. And the last accuses some CCI nurses who are not defendants in this lawsuit of lying about how his medical needs were addressed following his threatened hunger strike. Dkt. 79. These are not plausible grounds for sanctioning defendants, so I will deny these motions.

#### 2. State defendants' delivery of filings to Bergeron-Davila

Bergeron-Davila has filed a motion titled "motion for order" asking me to order the state defendants to send him their filings via the United States Postal Service. Dkt. 31. He says that this is necessary because the state defendants sent a response to an earlier motion to CCI staff to deliver to Bergeron-Davila, causing a 14-day delay. The state defendants say that the delay occurred because they mistakenly sent their response to CCI's recently retired litigation coordinator. Dkt. 37. They say that this occurred due to a short-term disruption in DOJ's mail system due to the coronavirus pandemic that has since been corrected, and they say that all

filings are being sent to Bergeron-Davila via the United States Postal Service as normal.[3] Accordingly, I will deny the motion as moot.

**3. Motion to stay**

Bergeron-Davila asks me to stay this litigation so that he can obtain and submit video footage that shows his difficulty in walking. Dkt. 48. He says that this footage will support his motions for preliminary injunctive relief. He asks for a hearing on his motions for injunctive relief at which he can show this footage. And he asks me to order defendants to allow him to take photographs of his legs, feet, and prison-issued slippers to show at the hearing. I do not need this evidence to rule on his requests for injunctive relief, so I will deny his motion. He is free to seek this evidence through discovery if he desires to do so.

**4. Motion to amend complaint**

Bergeron-Davila requested leave to file a second amended complaint. Dkt. 50. He has since withdrawn this motion in a note appended to the end of an unrelated motion. *See* Dkt. 80, at 3. So I will deny his motion for leave to amend. If Bergeron-Davila wishes to withdraw a motion in the future, he should file a separate document stating so.

ORDER

IT IS ORDERED that:

1. Plaintiff Raymond J. Bergeron-Davila's motions for preliminary injunctive relief, Dkt. 6, Dkt. 35, Dkt. 43, Dkt. 53, Dkt. 61, and Dkt. 76, are DENIED.

[3] Bergeron-Davila says in his first motion for sanctions that a few filings were hand-delivered to him instead of being mailed. Dkt. 64. But in his supporting declaration, he says only that he believes that they were not mailed to him. Dkt. 65, ¶ 1. In any event, he says that they were given to him on the same day that they were filed on the docket, so mailing them would likely have actually resulted in greater delay than hand-delivery.

2. The clerk of court is directed to attach a copy of this court's procedures for briefing motions for injunctive relief to this order. Any future motions by plaintiff for preliminary injunctive relief must comply with these procedures or they will be summarily denied.

3. Plaintiff's motions titled "motion for order," Dkt. 31, Dkt. 33, Dkt. 34, and Dkt. 42, are DENIED.

4. Plaintiff's motion for reconsideration, Dkt. 32, is DENIED.

5. Plaintiff's motions for sanctions, Dkt. 64, Dkt. 72, Dkt. 74, and Dkt. 79, are DENIED.

6. Plaintiff's motion to stay, Dkt. 48, is DENIED.

7. Plaintiff's motion to file a second amended complaint, Dkt. 50, is DENIED.

Entered July 27, 2020.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge